FILED
KENNETH S. GARDNER
CLERK

2017 FEB 16  PM 4: 04

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO
A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLORADO

In Re:

LAURIE LYNN BRINEGAR,

Debtor.

CHAPTER 7
CASE NO. 16-15037 EEB

## JOINT OBJECTION TO APPROVAL OF SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND PATRICK A. BRINEGAR SUPPORTED BY AFFIDAVIT

**COMES NOW** Laurie Lynn Brinegar, Debtor, and Richard and Judy Johnson, Creditors and parents of Debtor, to Object to the Approval of Settlement Agreement Between Trustee and Patrick A. Brinegar, supported by affidavit and state as follows:

### SUMMARY OF OBJECTION

1.     The Debtor was never adjudicated as incompetent[1] in the State Court and was adversely appointed a Guardian Ad Litem, violating her civil rights to due process of law.

2.     Mr. Michael Davis, the attorney retained for the Bankruptcy, told Ms. Brinegar and her Father at their first meeting that this serious issue would be addressed in the Bankruptcy Court, as well as other questionable actions in the State Court. (emphasis added) Instead, Mr. Davis has continually refused to return phone calls and email requests for information on the proceedings; and in particular,

---

[1] See attached affidavit, referenced as though fully re-written herein. Exhibit 1.

when would Ms. Brinegar get her chance to address the Court as indicated by Mr. Davis. (See Exhibit 1.)

3.      The Debtor is therefore left with no choice but to file this objection to the Settlement Agreement in an effort to protect her rights.

4.      The Settlement Agreement is based on information and conversations of incorrect assertions that Ms. Brinegar's affairs were properly adjudicated to the GAL; bringing into question every aspect of the Settlement Agreement.

5. These were the exact reasons the Debtor filed for Bankruptcy protection as recommended by Mr. Davis.

## BACKGROUND

6. Patrick Brinegar filed for divorce on April 23, 2014.

7. At the time Patrick and Laurie Brinegar owned multiple, profitable trucking companies together.

8. Also at the time Patrick and Laurie were building a million plus dollar home.

9. I, Laurie Brinegar, was completely locked out of access to funds from our businesses, due to Patrick siphoning all of our businesses revenues at one point.

10.     Later, I was able to gain access to funds from either one or two trucks income from the SZTJ Trucking, Inc. account.

11.     By July of 2015 I was faced with the dilemma of paying more money to my divorce attorneys, which would continue to leave me with little to no resources for food and medication; however, the bigger dilemma, which I was faced with at the time was the necessity to continue to attempt to get on top of the utterly disastrous state, that Patrick turned over the Operations of our businesses to me, per the Settlement Order from my Motion for an ER Temporary Financial Hearing, due to the violations of the divorce injunction and such. The businesses had to take priority, regarding whether to pay my attorneys or not, and the hope of my attorneys and I was that I would be able to get back on top of the repairs and bills. Therefore, I could retain them as counsel, again. Unfortunately, that was not to be the case, as I had no money to hire attorneys to defend myself. Additionally, in October of 2015, the Court ruled that I not be allowed any access to my traditional sources of income that I had relied on for the previous 20 years.

12.     I sought the advice of an attorney and Mr. Davis felt our best option was bankruptcy to stop the hemorrhaging of money and the fraudulent financial documents that were being filed in the State Court.

13.     Then Mr. Davis virtually "disappeared" after my Father gave
him the retainer fee and filed the bankruptcy petition. (See
Affidavit attached)

14.     Mr. Davis sent the Settlement Agreement and again didn't do
anything.


### OBJECTION, DISCUSSION AND RELIEF REQUESTED


15.         In light of the incorrect assertion that Ms. Brinegar was
found and declared incompetent by the State Court and subsequent
appointment of a GAL who is a prevalent factor of the Settlement
Agreement, she as well as Creditors Richard and Judy Johnston now
object to that agreement as it is based on erroneous assertions and
fraudulent documents..

16.         The present unilateral attempt by motion to settle the
Debtor's claims and Mr. Brinegar's priority interests in the property
is procedurally defective and must be denied.

17.         Pursuant to Fed. R. Bankr. R. 9019, a settlement may not be
approved by a court if it would achieve an unjust result amounting to
a clear abuse of discretion. *See* Reiss v. Hagmann, 881 F.2d 890, 891-
92 (10th Cir. 1989). To evaluate a settlement proposal, a court must
"determine whether the settlement is fair and equitable and in the

best interests of the Case. *In re Kaiser Steel Corp.*, 105 B.R. 971, 976 (D. Colo. 1989).

18.     To determine whether a proposed settlement is both fair and equitable and in the best interests of the estate, a court should consider "(1) the probable success of the litigation on the merits; (2) any potential difficulty in collection of a judgment; (3) the complexity and expense of the litigation; and (4) the interest of creditors in deference to their reasonable views." In re Western Pacific Airlines, Inc., 219 B.R. 575, 579 (D. Colo. 1998); In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (B.A.P 10th Cir. 1997). The court should also consider " 'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.' " In re Bugaighis, 03-12112, 2004 WL 3190352 at *5 (Bankr. D. Colo. Nov. 5, 2004) (unpublished) (emphasis added) (quoting In re Foster Mortgage Corp., 68 F.3d 914, 918 (5th Cir. 1995)).

19.     Although with respect to the first factor a judge need not "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement," In re Bugaighis, 2004 WL 3190352 at *5, a decision to approve a settlement "must be an informed one based upon an objective evaluation of developed facts," Reiss, 881 F.2d at 892 (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)). " 'Further, a court abuses its discretion if it approves a settlement "absent reasonable assurance that the settlement accords with the fair and equitable

standard." In re AWECO, 725 F.2d at 298. The proponent of the settlement has the burden of persuading the court that a settlement should be approved. See In re Hermitage Inn, Inc., 66 B.R. 71, 72 (Bankr. D. Colo. 1986).

20.     Here, the Settlement Agreement is based on an incorrect assertion that the Debtor, Laurie Brinegar has been properly adjudicated incompetent; biasing the entire agreement.[2] It must also be considered by the Court that Patrick Brinegar has committed "Fraud on the Court" by providing the Trustee, and thence the Court with fraudulent documents in order to avoid unpaid Federal taxes and place that burden on the Debtor. (see Exhibit 2 where Patrick Brinegar is recognized as 49% owner of SCTJ; contrary to statements in the Settlement Agreement that he has no ownership and therefore is not responsible for any past due taxes.

21.     Based on the proposed settlement agreement's incorrect facts and fraud, the settlement agreement cannot be approved in consideration of Debtor's and creditors interests and civil rights. The agreement is unenforceable and not fair and equitable. See In re Kaiser Steel Corp., 105 B.R. at 976; In re Kopexa Realty Venture Co., 213 B.R. at 1022

---

[2] There are also a plethora of incorrect facts, i.e. that Ms. Brinegar owns 100% of SZTJ company when in fact one of the attached documents with FedEx Ground clearly show she is a 51% owner and Mr. Brinegar holding the other 49%. [Federal and State tax returns, filed under express duress, if she did not sign, and prepared by a third party, showed incorrectly that the Debtor owns 100% and was therefore responsible for 100% of the tax burden. (IRS has made a claim of approximately $75,000 for the 2013 taxes; to the best of knowledge and belief, the 2014 and 2015 taxes have not been paid) The Debtor has filed Amended Federal and State tax returns showing her correct percentage of ownership and tax liability for the SZTJ Trucking, Inc. company.

LEFT INTENTIONALLY BLANK


Respectfully submitted this 16th day of February, 2016,


/s/ Laurie Brinegar, Debtor,
Laurie L. Brinegar
4890 Mt. Princeton Street
Brighton, Colorado  80601
(303) 637-7845
lb.brincy@gmail.com


/s/ Richard Johnson, Creditor,
1171 N. Goldfield Rd #320
Apache Junction, AZ, 85119
480 418-1897
email judyrichxx@msn.com


/s/ Judy Johnson, Creditor,
1171 N. Goldfield Rd #320
Apache Junction, AZ, 85119
480 985-1997
email judyrichxx@msn.com

**CERTIFICATE OF SERVICE**

The undersigned Laurie Brinegar, affirms that a true and correct copy of
 the above document with Affidavit was served on the following parties:


United States Trustee                    Delivered in person to Trustee
Byron G. Rogers Federal Building
1961 Stout St. Ste. 12-200 Denver, CO 80294

Patrick Brinegar c/o Trustee[3]          Delivered in Person to Trustee
33790 555th Street
Moulton, Iowa 52572
E-mail pb.briney@gmail.com


Mr. Michael Davis, Esq.                  by email
6795 E. Tennessee Ave., Ste. 330
Denver, CO 80224
E-mail mdavis@BKNMurray.com


Tom H. Connolly, Esq.                    by email
950 Spruce St., Ste. 1C
Louisville, CO 80027
tom@clpc-law.com



/s/Laurie Brinegar

---

[3] Laurie Brinegar and Patrick Brinegar have a no contact Order.

Exhibit 1. Affidavit of Lauri Brinegar

# AFFIDAVIT OF LAURIE L.BRINEGAR

The undersigned, Laurie Brinegar affirms, under penalty of perjury the following:

I was never adjudicated incompetent.

The fraudulently obtained Sorensen ruling for Patrick and his attorneys to obtain a GAL for myself in the divorce case does not include a finding of incompetency.

The Court clarified during a temporary custody hearing on May 5th, 2017[4] that I was not found to be incompetent, and have retained my litigation rights.

## BANKRUPTCY ATTORNEY.

My father and I had two meetings with Mr. Davis at his office. The first meeting was an extensive consultation, as we discussed a lot of information in my case. My father proceeded to hire Mr. Davis at the end of said consultation, and pay to retain Mr. Davis, as I had not been allowed any access to my traditional source of income (for approximately 20 years at the time of ruling in October of 2015 by Judge Quick) for so long, that I was not able to afford to pay to retain Mr. Davis to file for bankruptcy on my behalf.

---

[4] Recording available upon request.

The second time was to bring in my documentation for Mr. Davis to begin to draft my petition, as well as, further discussions to continue to clarify my clear as mud case.

The next time my father and I met with Mr. Davis was just prior to the 341 meeting to continue to clarify what was to happen in the 341 meeting; how I should answer; and, inform the Trustee, that my bankruptcy petition needed to be amended, which never happened. Mr. Sender, the Trustee, was made aware of some of the issues with the broker and the third party fiduciary, regarding the forced sale; however, I did question my bankruptcy attorney, regarding why more facts were not allowed to be given to the Trustee, and even though my bankruptcy attorney congratulated me on what I was able to get out, Mr. Davis assured my father and I, that the 341 meeting was not the appropriate forum to reveal more very pertinent details.

Mr. Davis was made well aware of my GAL, and what the Sorensen ruling is based on, which was not a finding of incompetency, as well as, a plethora of very serious issues in my divorce. My father and I were emphatically assured, that adversary complaints were to be filed, and a very extensive forensic accounting would be done by himself and whomever would become my Trustee.

Later, I informed Mr. Davis by phone, that Patrick had violated the Federal Automatic Injunction, and Mr. Davis was aghast. Mr. Davis insisted, that I immediately get all of my evidence to him, as I was

informed by Mr. Davis, that Trustee through the Trustee's attorney would definitely pursue an action against Patrick.

This incident is what lead to my filing the almost 24 page document with the State and Federal Courts, which was also emailed to the Trustee and the Trustee's attorney, as Mr. Davis had left town on vacation. I filed said documentation, due to urgency of Mr. Davis's statements, as well as, the need to address where approximately $50,000.00 in revenue was disappearing to weekly. I prefaced the fact that Mr. Davis was out of town and unavailable, as well.

Dated this 16th day of February, 2017,

Laurie Brinegar, Affiant

**Notary Public**

Subscribed and affirmed before me in the county of _____, State of Colorado, this __16th__ day of __February__ 20__17__.

Notary

My Commission expires

```
CAROL E LYMAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20004018191
MY COMMISSION EXPIRES 06/21/2020
```

EXHIBIT 2 Document showing 50% interest
by Patrick Brinegar

DIVISION OF WORKERS- COMPENSATION
Employer Secton

### Rejection of Coverage by Corporate Officers or Members of a Limited Liability Company

Nature

Pursuant to C.R.S Section841-202
Part A

Name of Corporation or LLC _SZTJ Trucking, Inc_

Mailing Address _335 Octillo St._

_____Street or P.O. Box, Unit/Suite_

_Brighton_ _CO_ _80601_
City        State        Zip

Business Phone _3036557997_  Federal Employer Identification Number _45-4474143_

Date of Incorporation or Filing of Articles of Organization _02 07 12_

ess _Trucking-hauling for Fedex_

Identify all corporate officers or LLC members electing to reject workers compensation coverage: ___ of Business

| Name | Title (if Corporation) | Percent of Shares Owned/ Membership |
|---|---|---|
| **Lau-ric** | President Vice President | 0 |
| Interest • | | |

Under C.R. S. Æ-41-202(4), Acorporate oficer means Athe chairperson of the board, president. vice-president, secretary, or treasurer who is an owner of at least ten percent of the stock of the comoration and who controls, supervises or manages the business affairs of the corporation, as attested to by tie secretary of the corporation at the time of the election— LI C ræmbers must own at least 10% of the merrbership interest in the convany at all times and control, supervise or manage the business affairs of the limited liability company to be eliqible to refect coverage. Idenify tie number of employees of the corporation or LLC Note: Any person who is an employee of the corporation or LLC and who is not eligible or does not elect to reject coverage must be insured for workers' compensation.

Name of corporation or LLC—s workers= compensation insurance carrier _____

Policy Number_____ Effective Dates_____ to_____

I, _Laurie L Brinegar_, in my capacity as Corporate Secretary or LLC Manager of _SZTJ Trucking, Inc_ certify that the above and attached information is correct and complete.

Date: _3-25-12_

Corporate Secretary or LLC Manager (Signature)

To complete this form, a separate questionnaire, Part B (see reverse side), must be completed and attached for each offlcerlmember rejecting workers= compensation Insurance coverage. Incomplete forms may be rejected. One of the following documents issued by the Secretary of State must also be submitted:

X   Corporations: Attach a copy of the Certificate of Fagt Qt IncorpQ@tiQn. or the Certificate of Incqmrqtion, or the A Filed Copys of the Articles of Incorporatign.

x   Foreign Corporations: Attach a copy of the Certificate Of Authority.

x   Limited Liability Companies: Attach a copy of the Cqpy= pf the Artides Of Organization.

Important: Ef the corporation or LLC has a workers compensation insurance carrier, file this form by certified mail directly with that insurance carrier. If there is no workers compensation insurance carrier, this form must be filed by certified mail with the Employer Cor•npliance unit of the Division of Workers= Compensation. The effective date of election is the day following receipt of said notice by the insurance carrier or the Division. If an officer or I I C rrEmber changes hislher election, a revised questionnaire must be filed.

C.R.S. Section 10-1-127(7)(a) states: "It is unlawful to knowingly provide false, Incomplete, or misleading facts or Information to an insurance company for the purpose of defrauding or attempdng to defraud the company. Penalties may Include

imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an Insurance company who knowingly provides false, incomplete or misleading facts or Infomation to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a sewement or award payable from Insurance proceeds shall be reported to the Colorado Division of Insurance wlülln the Department of Regulatory Agencies."

WC43 Rev[3/98]



JOINT OBJECTION TO APPROVAL OF SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND PATRICK A. BRINEGAR SUPPORTED BY AFFIDAVIT